2004 UT 29

**STATE of Utah, Plaintiff and Appellee,**

v.

**Stacey NELSON–WAGGONER, Defendant and Appellant.**

**No. 20000613.**

Supreme Court of Utah.

April 16, 2004.

Mark L. Shurtleff, Att'y Gen., Jeanne Inouye, Asst. Att'y Gen., Salt Lake City, N. George Daines, Logan, for plaintiff.

Margaret P. Lindsay, Provo, for defendant.

NEHRING, Justice:

¶ 1 Stacey Nelson–Waggoner appeals his conviction for aggravated sexual assault. The trial court sentenced Mr. Nelson–Waggoner to a prison term of ten years to life, to be served consecutively with a sentence from a prior first degree felony conviction. On appeal, Mr. Nelson–Waggoner asserts: (1) that the trial court committed plain error by allowing the State to amend the criminal information two days prior to trial, and (2) that he received ineffective assistance of counsel. We affirm.

¶ 2 In November 1996, K.W. was living with her parents in Logan, Utah. The family

had recently moved to Logan from Provo, Utah, and K.W. had yet to make any new friends in the area. On a Friday evening shortly before Thanksgiving, K.W. met Mr. Nelson–Waggoner at a dance club in Salt Lake City. Mr. Nelson–Waggoner, who also lived in Logan, told K.W. that he was a football player for Utah State University (he wasn't), and said that he could introduce her to his friends. K.W. welcomed the prospect to meet new people and gave him her telephone number.

¶ 3 The next day Mr. Nelson–Waggoner phoned K.W. and asked her to have lunch with him on Sunday. She agreed and met him at a pizzeria early the following afternoon. At his suggestion, they went to a different restaurant, after leaving her car in a Utah State University dormitory parking lot.

¶ 4 Following lunch, Mr. Nelson–Waggoner asked K.W. to go with him to his fraternity house so he could say goodbye to a friend. She rode with him to the fraternity house and waited briefly in his car while he went inside. When he returned, Mr. Nelson–Waggoner asked K.W. if he could go to his dormitory room to change from his suit into casual clothing. He said that all the football players lived at the dormitory and that if K.W. wanted to meet them, she only had to let him know. They drove to the dormitory, and K.W. went inside with him to his room.

¶ 5 The dormitory room was small, and most of the room was taken up by a large bed. K.W. sat on the corner of the bed closest to the door and watched television. As Mr. Nelson–Waggoner started to undress by removing his suit jacket, K.W. asked if she could leave the room. He responded "no," and went into another room to finish changing. When Mr. Nelson–Waggoner returned, he was wearing a shirt "with the sides cut out" and athletic shorts, but no shoes or socks.

¶ 6 Mr. Nelson–Waggoner sat on a chair near the bed and appeared to make two phone calls while K.W. remained sitting on the corner of the bed. After hanging up the phone, Mr. Nelson–Waggoner sat down on the bed next to K.W. She asked him about the pictures of two little girls on his cork-board. He said they were his daughters. K.W. later testified that the pictures had made her wonder if Mr. Nelson–Waggoner were married, but decided it was not important to her because she "wasn't really there to date him."

¶ 7 Mr. Nelson–Waggoner then told K.W. she was "cute" and turned and pinned her arms above her head. He began kissing her and running his hand over her breasts. When she told him to stop, he persisted and bit her neck, drawing blood. She again told him to stop, threatening to scream. He continued his attack and K.W. screamed; he released her, and she ran from the room.

¶ 8 The State charged Mr. Nelson–Waggoner with aggravated sexual assault. The original criminal information gave the date of the offense as "on or about: November 17, 1996 to November 30, 1996." At the preliminary hearing, K.W. testified that the offense occurred on Sunday, November 24, 1996.

¶ 9 Mr. Nelson–Waggoner then filed a motion for a bill of particulars to require the State to specify the place, date, and time of the offense. In its response, the State again placed the offense on a Sunday between November 17 and November 30, 1996, but conceded that it was unable to specify the exact date. Mr. Nelson–Waggoner moved the court to require the State to identify the precise date and time of the offense. The court addressed the matter at a pre-trial hearing, asking the State if it could provide a more specific date and time. The State repeated that it could not. The record does not disclose whether the court ruled on this motion.

¶ 10 At the same pre-trial hearing, Mr. Nelson–Waggoner filed a notice of alibi. He stated he would call witnesses at trial to establish that he was in the Cache County area on Sunday, November 17, 1996, but not in the company of K.W., and that he was in Phoenix, Arizona, on Sunday, November 24, 1996. These were the only Sundays within the range of dates provided by the State in its response to Mr. Nelson–Waggoner's motion for a bill of particulars. Mr. Nelson–Waggoner said he had recently learned that K.W. was "lea[n]ing more towards" Novem-

ber 17 as the date of the offense, instead of November 24, the date she testified to at the preliminary hearing.

¶ 11 About three weeks before trial, Mr. Nelson–Waggoner filed a second notice of alibi, which he later amended, correcting the name of one of his witnesses. In these notices, he repeated his intention to call witnesses to establish that he was in Cache County but not with K.W. on November 17, 1996, and that he was in Phoenix, Arizona, on November 24, 1996.

¶ 12 Two days before the trial began, the State amended its information, narrowing the date of the offense to "on or about November 17, 1996." Mr. Nelson–Waggoner did not object.

¶ 13 At trial, Mr. Nelson–Waggoner called three witnesses. None of the witnesses could vouch for his whereabouts on November 17, 1996. In closing argument, the prosecutor stated that K.W.'s trial testimony about the assault was uncontroverted by any defense witnesses and that Mr. Nelson–Waggoner had failed to produce helpful relevant alibi witnesses.

¶ 14 Mr. Nelson–Waggoner brings two issues before us. First, he argues that the trial court erred in allowing the State to amend its information just two days before trial. He acknowledges, however, that he failed to preserve this issue before the trial court and accordingly invites us to review the issue under the standard of plain error. Second, he argues that he received ineffective assistance of counsel, claiming that his lawyer (1) failed to object to the amended information, and (2) failed to object to allegedly improper statements made during the State's closing argument. We review these issues as a matter of law. *State v. Maestas*, 1999 UT 32, ¶ 20, 984 P.2d 376. We address each of Mr. Nelson–Waggoner's issues in turn.

## I. AMENDMENT OF INFORMATION

¶ 15 Mr. Nelson–Waggoner contends that the trial court erred by allowing the State to amend its information to pare the field of possible dates of the assault from two weeks (November 17 to November 30) to one day (November 17). He speculates that the State's only reason for doing so was that it became aware of Mr. Nelson–Waggoner's solid alibi testimony that he was in Arizona during most of the two-week period covered in the earlier information. He argues that allowing the State to amend the information was error because his substantial rights were prejudiced, in violation of Utah Rule of Criminal Procedure 4(d).

¶ 16 Mr. Nelson–Waggoner admits this claim was not raised at the trial level and was thus not preserved for appeal. Under ordinary circumstances, we will not consider an issue brought for the first time on appeal unless the trial court committed plain error or exceptional circumstances exist. *State v. Arguelles*, 2003 UT 1, ¶ 41, 63 P.3d 731. Mr. Nelson–Waggoner argues that his case meets the exception on both counts. He further argues that manifest injustice will result if we do not address his claim. We disagree.

> [T]o establish the existence of plain error and to obtain appellate relief from an alleged error that was not properly objected to, the appellant must show the following: (i) An error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined.

*State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993). Because the trial court did not err in permitting the State to amend its information, Mr. Nelson–Waggoner's argument fails to clear the first hurdle.

¶ 17 The right of an accused to know the nature of the offense with which he is charged is a fundamental right guaranteed by both our federal and state constitutions.[1]

---

1. In relevant part, article I, section 12 of the Utah Constitution states:

   In criminal prosecutions the accused shall have the right to appear and defend in person and by counsel, to demand the nature and cause of the accusation against him, to have a copy thereof, to testify in his own behalf, to be confronted by the witnesses against him, to have compulsory process to compel the attendance of witnesses in his own behalf, to have a

This right is rooted in the recognition that when the government exercises its authority to bring criminal charges against a person and thereby places him at risk of losing his liberty, the accused should be entitled to insist that the crime be defined with such reasonable clarity that he can mount a defense. *State v. Fulton,* 742 P.2d 1208, 1213–14 (Utah 1987). By requiring that an offense be specifically identified, the right to be apprised of the nature of the crime also reinforces the protection against double jeopardy.[2] *Id.*

¶ 18 Rule 4 of the Utah Rules of Criminal Procedure gives practical expression to these fundamental rights. It defines the charging documents, describes the scope of their content, provides rules of construction, and, of importance here, sets out the limitations on their amendment. Specifically, rule 4(d) states that "[t]he court may permit an indictment or information to be amended at any time before verdict if no additional or different offense was charged and the substantial rights of the defendant are not prejudiced." Utah R.Crim. P. 4(d). Here, there is no contention that an additional or different offense is charged. Instead, Mr. Nelson–Waggoner argues that his substantial rights were prejudiced because the State's amendment of the information undermined his theory of the case in two ways: (1) he was deprived of the opportunity to argue that K.W. was not credible, and (2) he was unable to fully exploit his alibis. Neither contention amounts to an infringement of Mr. Nelson–Waggoner's substantial rights.

¶ 19 First, Mr. Nelson–Waggoner claims that by fixing a specific date for the offense, the amended information vitiated his plan to attack K.W.'s credibility. According to Mr. Nelson–Waggoner, K.W.'s inconsistent statements regarding the date of the assault were rendered irrelevant when the amended information alleged a specific date. It is unclear to us why any rule of evidence would foreclose inquiry into K.W.'s changed recollection or why Mr. Nelson–Waggoner was impaired from piecing together a defense theory from inconsistencies between K.W.'s preliminary hearing and trial testimony.[3] Nevertheless, Mr. Nelson–Waggoner did not pursue this course of action, and accordingly, no substantial right was prejudiced.

¶ 20 Second, we have held that an amendment to an information which expands the range of dates for the occurrence of an alleged offense can implicate substantial rights of a defendant by compromising his opportunity to present alibi evidence. *State v. Robbins,* 709 P.2d 771, 773 (Utah 1985). In *Robbins,* we imposed a duty on trial courts "to require the State to give the defendant the best information it has as to when the alleged crime took place." *Id.* There, we disapproved of the State's unexplained amendment of its information to expand the dates when Mr. Robbins allegedly sexually abused a child beyond those in the original information for which Mr. Robbins had filed a notice of alibi. We noted that "due process requires that an accused be given sufficiently precise notification of the date of the alleged crime so that he can prepare his defense." *Id.* at 772 (citing *McNair v. Hayward,* 666 P.2d 321, 326 (Utah 1983)).

¶ 21 When compared to *Robbins,* the facts here display graphically why not every

---

speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed, and the right to appeal in all cases.
The Constitution of the United States guarantees the same right:
In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of counsel for his defence.
U.S. Const. amend. VI.

2. *See* Utah Code Ann. § 76–1–403 (2003); U.S. Const. amend. V.

3. Of course, we can only speculate on whether the State would have objected to the attempted introduction of K.W.'s preliminary hearing testimony or how the trial court would have ruled on the proffer because Mr. Nelson–Waggoner failed to pursue this line of questioning and neither raised nor preserved any evidentiary issue.

amendment to an information which frustrates a defendant's theory of the case transgresses a "substantial right." Mr. Nelson–Waggoner seeks to fault the trial court for following our instructions in *Robbins* by requiring the State to give him the best information it had as to when the assault of K.W. took place. The identification of a precise date rendered irrelevant Mr. Nelson–Waggoner's alibis for the dates no longer at issue, but this development could not have reasonably altered the result. Thus, Mr. Nelson–Waggoner's alibi defense was not diminished in any meaningful way, and we do not find there to be plain error on the part of the trial court.

¶ 22 Mr. Nelson–Waggoner next argues that if we do not consider his unpreserved argument as plain error, we should take it up due to "exceptional circumstances." Mr. Nelson–Waggoner insists that his case is procedurally exceptional due to (1) the length of time between the alleged assault and trial (3 years), (2) the repeated discussions between the parties and the trial court concerning the date and time of the offense and Mr. Nelson–Waggoner's request for a bill of particulars/specification of date and time of offense, (3) the difference between the date of offense in the victim's preliminary hearing testimony and the amended information, and (4) Mr. Nelson–Waggoner's alibi evidence.

¶ 23 We have said that the extraordinary circumstances doctrine applies to "rare procedural anomalies." *Dunn,* 850 P.2d at 1209 n. 3. Recently, we have applied the exception sparingly, reserving it for the most unusual circumstances where our failure to consider an issue that was not properly preserved for appeal would have resulted in manifest injustice. The court of appeals has aptly characterized the concept as a "safety device" against such injustice. *State v. Irwin,* 924 P.2d 5, 8 (Utah Ct.App.1996) (citing *State v. Archambeau,* 820 P.2d 920, 923 (Utah Ct. App.1991)).

¶ 24 We need not dwell on this claim. Having found that the trial court acted properly in permitting the State to amend the information, we necessarily conclude that nothing extraordinary or anomalous has be-

fallen Mr. Nelson–Waggoner which warrants our intervention.

¶ 25 Finally, Mr. Nelson–Waggoner asks us to consider this claim in order to avoid a "manifest injustice" as defined by rule 19(e) of the Utah Rules of Criminal Procedure. He alleges that a manifest injustice will result if we permit the trial court's unexplained reversal of position on the issue of the date of the alleged offense to go unremedied. According to Mr. Nelson–Waggoner, the trial court told the State that if it could not narrow the range of dates at a preliminary hearing, it would be precluded from asserting more exacting temporal evidence at trial, but later allowed the State to amend its information in contravention of its prior ruling.

¶ 26 Mr. Nelson–Waggoner's reliance on rule 19(e) is misplaced. Rule 19(e) reads:

Objections to written instructions shall be made before the instructions are given to the jury. Objections to oral instructions may be made after they are given to the jury, but before the jury retires to consider its verdict. The court shall provide an opportunity to make objections outside the hearing of the jury. Unless a party objects to an instruction or the failure to give an instruction, the instruction may not be assigned as error except to avoid a manifest injustice. In stating the objection the party shall identify the matter to which the objection is made and the ground of the objection.

Utah R.Crim. P. 19(e). The scope of "manifest injustice" as defined by this rule is limited to jury instructions and does not address the issue raised by Mr. Nelson–Waggoner. Thus, a remedy under rule 19(e) is not available to Mr. Nelson–Waggoner because he has not contested any jury instructions.

## II.  INEFFECTIVE ASSISTANCE OF COUNSEL

¶ 27 Mr. Nelson–Waggoner next asserts that his counsel was ineffective for two reasons: (1) for failing to object to the amended information, and (2) for failing to object to statements made by the State during closing argument. In assessing a claim of ineffective assistance of counsel, we rely on the test created in *Strickland v. Washing-*

*ton.* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

To prevail on an ineffective assistance of counsel claim under the *Strickland* test, 'a defendant must show (1) that counsel's performance was so deficient as to fall below an objective standard of reasonableness and (2) that but for counsel's deficient performance there is a reasonable probability that the outcome of the trial would have been different.'

*State v. Montoya,* 2004 UT 5, ¶ 23, 84 P.3d 1183 (quoting *Wickham v. Galetka,* 2002 UT 72, ¶ 19, 61 P.3d 978).

¶ 28 Mr. Nelson–Waggoner's first argument, that his counsel was ineffective for failing to object to the amended information, is without merit as we have already stated that the amendment was not in error and that the amended information had no likelihood of affecting the outcome of the trial. Therefore, counsel's failure to object to the amended information was neither deficient nor prejudicial.

¶ 29 Next, Mr. Nelson–Waggoner argues that his counsel failed to object to improper comments made by the State during closing argument concerning Mr. Nelson–Waggoner's election not to testify. Mr. Nelson–Waggoner argues that his counsel's failure to timely object to the State's comments, which he claims infringed his Fifth Amendment privilege against self-incrimination, was unreasonably deficient.[4]

■ ¶ 30 While we generally will not examine the State's closing argument if the defendant failed to timely object to it, *State v. Hales,* 652 P.2d 1290, 1292 (Utah 1982), we will do so if the defendant states that the failure to object was due to ineffective assistance of counsel. *State v. Hansen,* 2002 UT 114, ¶ 21 n. 2, 61 P.3d 1062. Thus, in this case, Mr. Nelson–Waggoner's failure to object does not prejudice his ability to raise the issue on appeal.

■ ¶ 31 Accordingly, we review Mr. Nelson–Waggoner's claim of ineffectiveness under the *Strickland* standard. We first consider whether counsel's inaction was, in fact, deficient. Our rule on this subject is well-established. We have previously stated:

A prosecutor has the duty and right to argue the case based on the "total picture shown by the evidence or the lack thereof," including reference to the paucity or absence of evidence adduced by the defense. But prosecutorial comment on a defendant's refusal to testify may violate a defendant's privilege against self-incrimination. Thus, a prosecutor commits constitutional error when his statement is "manifestly intended or [is] of such character that a jury would naturally and necessarily construe it to amount to a comment on the failure of the accused to testify."

*Hales,* 652 P.2d at 1291 (quoting *State v. Kazda,* 540 P.2d 949, 951 (Utah 1975); *State v. Nomeland,* 581 P.2d 1010, 1011 (Utah 1978) (other internal citations omitted)). It is clear that a prosecutor's comments about the "paucity or absence" of a defendant's evidence does not offend constitutional guarantees against self-incrimination. Yet, such a line of attack on a defendant's case can always be interpreted as an invitation to the jury to convict the defendant because he did not testify. We therefore conclude that the constitutional line is crossed only when a remark or an accumulation of remarks present what can fairly be characterized as an overt reference to a defendant's failure to testify.

■ ¶ 32 When assessed against this backdrop, the State's closing argument remarks did not cross the line. The statements Mr. Nelson–Waggoner contests include the following: "no one has told you . . . where the defendant was or what he was doing on the 17th. No one has told you, except for one person, and that is [K.W.]"; "nobody knows where he is on the afternoon of the 17th except for [K.W.]"; "the evidence you heard is clear . . . it is undisputed"; "[i]t's the truth because that's all the evidence you've heard. And, in fact, the defendant's brother and two friends took the stand . . . and not once did they say, she's up in the night"; and "the

---

4. Mr. Nelson–Waggoner does not assert that his privilege against self-incrimination under article I, section 12 of the Utah Constitution was in-fringed, and therefore we do not address the issue.

defendant's brother and his two good friends ... took the stand, they were here available, and not once did they dispute that evidence." Mr. Nelson–Waggoner presents ten such statements. We need not address them each individually as they share features which permit them to be analyzed as a group.

¶ 33 Individually and collectively, the State's comments constitute "paucity" statements, and not comments on Mr. Nelson–Waggoner's silence. Mr. Nelson–Waggoner did in fact have three alibi witnesses testify, none of whom actually indicated that they knew where he was at the time of the assault. The State was clearly entitled to point this out to the jury. The State was also free to highlight an overall shortfall of defense evidence. The remarks which Mr. Nelson–Waggoner culled from the State's closing argument provide examples of statements which may, but which must not "naturally" or "necessarily," be interpreted as appeals to convict Mr. Nelson–Waggoner because he did not testify. Thus, we do not find that Mr. Nelson–Waggoner's attorney rendered ineffective assistance by choosing to not object to either the amended information or to statements made during closing argument. Even if we did, Mr. Nelson–Waggoner has not presented us with sufficient evidence to overcome the second prong of the *Strickland* test, namely, that the outcome of the trial would have been different if his attorney had in fact objected. Accordingly, we reject Mr. Nelson–Waggoner's contention that his attorney rendered ineffective assistance.

¶ 34 We affirm the findings and decision of the trial court. We hold that the trial court's decision to allow the State to amend its information shortly before the trial was not plain error under rule 4(d) of the Utah Rules of Criminal Procedure, nor do we see that exceptional circumstances in this case require us to consider a claim not properly preserved at trial. We also hold that defense counsel's decision not to object to the amendment or to comments made by the State during closing argument was not deficient, and therefore does not rise to the level of ineffective assistance.

¶ 35 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Justice PARRISH concur in Justice NEHRING's opinion.