2004 UT App 395

**STATE of Utah, Plaintiff and Appellee,**

v.

**Patrick TILT, Defendant and Appellant.**

**No. 20030785–CA.**

Court of Appeals of Utah.

Nov. 4, 2004.

Peter D. Goodall and Ronald J. Yengich, Yengich Rich & Xaiz, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Christopher D. Ballard, Asst. Atty. Gen., Salt Lake City, for Appellee.

## OPINION

DAVIS, Judge:

¶ 1 Patrick Tilt (Defendant) appeals his conviction of murder, a first degree felony. We affirm.

## BACKGROUND

¶ 2 On the morning of July 24, 2002, Defendant's wife was awakened by Defendant to find their infant son (the child) lying on their bed, purple in color, and not breathing. Both Defendant's mother-in-law, with whom Defendant and his wife were residing, and the paramedics attempted to resuscitate the child, but were unsuccessful. An autopsy of the child's body revealed that several of his ribs had been fractured. The medical examiner determined that the child "died as the result of asphyxia due to chest compression" and "certified the manner of death as homicide."

¶ 3 The Ogden City Police Department received the medical examiner's findings and assigned Detective James Gent to investigate the child's death. After reviewing the medical examiner's findings and the child's medical records, Detective Gent had some questions for the child's caregivers about the child's injuries and the circumstances surrounding his death. As a result, Detective Gent scheduled interviews with Defendant, Defendant's wife, and Defendant's mother-in-law.

¶ 4 One day prior to Defendant's scheduled interview, Defendant voluntarily arrived at the police station and asked to speak with Detective Gent. Detective Gent testified that although he was surprised by Defendant's early arrival at the station, he met with Defendant. Detective Gent testified that the two sat at his desk and "talked about the case." According to Detective Gent, because Defendant expressed curiosity about "what was going on," he explained to Defendant that he was investigating the child's death to attempt to determine how it occurred and, as part of that investigation, he needed to take witness statements from Defendant, Defendant's wife, and Defendant's mother-in-law. Defendant then agreed to give a witness statement to Detective Gent. Detective Gent

did not recite Defendant's *Miranda* rights at that time because, according to Detective Gent, Defendant was not yet a suspect.

¶ 5 Detective Gent then accessed a standard form document on his computer used for taking witness statements. Detective Gent testified that he explained to Defendant that he would be memorializing Defendant's statement by typing it into the standard form on the computer, and that he asked Defendant to watch the computer monitor and follow along as he typed Defendant's statement. Defendant first gave Detective Gent a narrative statement explaining what occurred during the nighttime hours surrounding the child's death. In this statement, Defendant indicated that (1) because the child was having trouble sleeping that night he placed the child on the bed between himself and his wife; (2) once the child fell asleep on the bed, he also fell asleep and, as a result, forgot to put the child back into the baby cradle; and (3) Defendant awoke to find the child "blue in the face." Following this narrative statement, Detective Gent asked Defendant some specific questions, to which Defendant responded. Detective Gent testified that he typed Defendant's narrative statement, his follow-up questions, and Defendant's responses "word for word."

¶ 6 Detective Gent admitted that he became concerned during his questioning of Defendant because some of Defendant's responses conflicted with the medical examiner's findings and the child's medical records. At one point during Detective Gent's questioning, Defendant began to ask him questions. While answering Defendant's questions, Detective Gent "stopped" the witness statement "to talk to [Defendant]" and did not type Defendant's questions or his responses. Detective Gent testified that while he was answering Defendant's questions, Defendant "was fidgeting around," was "starting to appear nervous," and "wouldn't make eye contact anymore." Detective Gent also testified that he "was getting the impression [Defendant] knew more about this case than [Defendant] had already told [him]" and that he believed Defendant "was just about to confess."

¶ 7 Detective Gent testified that, at this point, he recited Defendant's *Miranda* rights and confirmed that Defendant understood them. Defendant then gave Detective Gent a new narrative statement. In this statement, Defendant indicated that on the night of the child's death, he "accidentally squeezed" the child until "it sounded like [the child] wasn't breathing." Defendant also stated that he "didn't think anything of it" and "didn't acknowledge that [the child] wasn't breathing." Defendant further explained that he had fabricated the first narrative statement because he "was scared that [his wife] and her family would yell at [him] for what happened" and he did not want his wife "to find out [he] did something wrong." Detective Gent then asked Defendant some specific questions about Defendant's new narrative statement, to which Defendant responded. During Detective Gent's questioning, Defendant admitted that he had squeezed the child on two occasions, including the night of the child's death. Defendant stated that on the first occasion, he was "just so frustrated that [he] squeezed [the child] around the chest" for "around two minutes." Defendant admitted that on the second occasion—the night of the child's death—he knew afterward that the child was not breathing and that the child was dead. Defendant stated that he did not say anything after squeezing the child on the second occasion because he was "scared" and did not want his wife and her family "to think [he] was a bad father." When Detective Gent asked Defendant if he had ever "thought about what life would be like if [the child] weren't around," Defendant admitted that he "was always thinking about that when [he] was holding [the child]." Defendant stated that prior to the second occasion, he had weighed "the pros and con[s] to see ... if it would be better or worse if [the child] wasn't there." Defendant admitted that when he squeezed the child on the second occasion, he had "decided that it would be better for [the child] not to be around." Defendant also admitted that when he squeezed the child on the second occasion, he did so "knowing [the child] would die." Detective Gent testified that he typed Defendant's new narrative

statement, his follow-up questions, and Defendant's responses "word for word."

¶ 8 Detective Gent testified that after Defendant's statement was complete, he used the word processing program to check the spelling in the statement and then printed a copy of the statement for Defendant to review. Detective Gent testified that after reading the statement, Defendant did not wish to change any part of it. Detective Gent testified that he and Defendant reviewed the specific parts of the statement where he needed Defendant's initials or signature for verification that the statement was correct. Detective Gent testified that he explained to Defendant the portion of the statement indicating that Defendant was providing the statement of Defendant's "own free will," and that Defendant initialed this portion of the statement. Detective Gent testified that he also had Defendant review each page of the statement to verify that its contents were correct and, if so, initial the bottom of each page. Defendant's statement, which is contained in the record before us, reveals that he did initial each of the aforementioned parts of the statement. The statement also reveals that Defendant specifically initialed the portion of the statement providing that Detective Gent recited Defendant's *Miranda* rights, and that Detective Gent and Defendant signed the final page of the statement to verify that each of them had read the statement and that it was "true and correct."

¶ 9 Based upon the information provided in his witness statement, Defendant was charged by information with murder and tried by jury. At numerous points during Defendant's closing argument, his counsel argued that Defendant was not guilty of murder because the child's death occurred accidentally. In response to this assertion, the prosecutor argued that Defendant had failed to present any evidence in support of its theory that the child's death occurred accidentally. After closing arguments were completed, Defendant's counsel moved for a mistrial based upon the prosecutor's statements

during closing arguments, which Defendant's counsel believed shifted the burden of proof to Defendant and improperly referenced Defendant's decision not to testify. The trial court denied Defendant's motion. Thereafter, the jury returned a guilty verdict on the murder charge. Defendant appeals his conviction.

## ISSUES AND STANDARDS OF REVIEW

¶ 10 Defendant argues that the trial court erred by admitting his confession into evidence. "Although the admission or exclusion of evidence is a question of law, we review a trial court's decision to admit or exclude specific evidence for an abuse of discretion." *State v. Cruz–Meza*, 2003 UT 32, ¶ 8, 76 P.3d 1165.

¶ 11 Defendant also argues that the trial court erred by denying his motion for a mistrial, which was based upon allegedly improper statements the prosecutor made during closing arguments. "We review rulings on motions for a mistrial based on prosecutorial misconduct for abuse of discretion." *State v. Reed*, 2000 UT 68, ¶ 18, 8 P.3d 1025.

## ANALYSIS

### I. Admissibility of Confession

¶ 12 Defendant argues that the trial court erred by admitting his confession into evidence. He urges us to adopt the rule that a confession taken in a place of detention where electronic recording is feasible is admissible into evidence only if it is electronically recorded.

¶ 13 In *State v. Villarreal*, 889 P.2d 419 (Utah 1995), the Utah Supreme Court addressed the issue of whether a confession must be contemporaneously recorded[1] in order for it to be admissible into evidence. *See id.* at 426–27. Although the court recognized that making a contemporaneous record of a defendant's confession is a desirable practice, it also recognized that adopting a rule that would make a defendant's confession admissible only if it was contemporaneously record-

---

**1.** In *State v. Villarreal*, 889 P.2d 419 (Utah 1995), the Utah Supreme Court referred to a "contemporaneous record" as one made "by written or electronic means" and as an "electronic or other recording." *Id.* at 426–27.

ed "would deprive the courts of much evidence that is generally reliable." *Id.* at 427. The court went on to specifically "hold that contemporaneous recording of a confession is not mandated by the Utah Constitution." *Id.*

¶ 14 The rule that Defendant urges us to adopt would not require contemporaneous recording of all confessions, but instead would require electronic recording of confessions when taken in a place of detention where electronic recording is feasible. Because the rule Defendant urges us to adopt is narrower than the rule urged by the defendant in *Villarreal*, he argues that *Villarreal* is not applicable to his case. In the alternative, Defendant argues that if we determine that *Villarreal* is applicable to his case, "changing conditions mandate a departure from [its] holding."

¶ 15 These arguments fail for several reasons. First, *Villarreal* is directly applicable to Defendant's case. Despite the fact that it is narrower than the rule set out in *Villarreal*, the rule that Defendant urges us to adopt is in direct conflict with the *Villarreal* court's holding "that contemporaneous recording of a confession is not mandated by the Utah Constitution." *Id.* Second, even if we were to disagree with this holding, we do not have the authority to depart from it or overturn it. *See State v. Horrocks*, 2001 UT App 4, ¶ 24, 17 P.3d 1145 (stating that "this court cannot disregard or overturn decisions of [our] supreme court"). Finally, even if we had the authority to adopt the rule Defendant urges, we would decline to do so. We agree with the *Villarreal* court's reasoning that, if we were to do so, we "would deprive the courts of much evidence that is generally reliable." 889 P.2d at 427. This is particularly true in Defendant's case, where such a rule would have prevented the admission of his confession, despite the fact that it is clearly reliable evidence.

¶ 16 Because we refuse to adopt the rule urged by Defendant, we conclude that the trial court did not abuse its discretion by admitting his confession into evidence.

## II. Motion for Mistrial

¶ 17 Defendant argues that the trial court erred by denying his motion for a mistrial, which was based upon allegedly improper statements the prosecutor made during closing arguments.[2] Defendant asserts that these statements (1) shifted the burden of proof to Defendant and (2) improperly referenced Defendant's decision not to testify. Defendant's arguments are without merit.

¶ 18 First, the prosecutor's statements at issue did not shift the burden of proof to Defendant. "[T]he prosecution has the duty to argue the case based on the total picture of the evidence or lack of evidence, including the paucity or absence of evidence adduced by the defense." *State v. Bailey*, 712 P.2d 281, 286 (Utah 1985). During closing arguments, Defendant's counsel was the first to argue that the jury could acquit Defendant based upon the theory that the child's death occurred accidentally.[3] The prosecutor's statements, which were made in response to this argument, indicated only that there was a "paucity or absence of evidence adduced by the defense" on this theory. *Id.* Because "Defendant opened the door to these comments by arguing at length in his closing argument to the jury that it should acquit [him] based" upon the theory that the child's death occurred accidentally, "[t]he prosecutor was entitled to rebut [these] remarks." *State v. Bowman*, 945 P.2d 153, 157 (Utah Ct.App.1997).

¶ 19 Second, the prosecutor's statements at issue did not improperly reference Defendant's decision not to testify.

It is clear that a prosecutor's comments about the "paucity or absence" of a defendant's evidence does not offend constitutional guarantees against self-incrimination. Yet, such a line of attack on a

2. Specifically, the prosecutor stated:
Because it's not that [the child's death] was an accident. There was no justification as to how it was a[n] accident. Was the accident in that [Defendant] made a bad decision? Was the accident that he squ[eezed] [the child] too

hard? Was the accident that he didn't know that [the child] was dead? There was no explanation as to how it was an accident.

3. Defendant's counsel made this argument at numerous points during his closing argument.

defendant's case can always be interpreted as an invitation to the jury to convict the defendant because he did not testify.... [T]he constitutional line is crossed only when a remark or an accumulation of remarks present what can fairly be characterized as an overt reference to a defendant's failure to testify.

*State v. Nelson–Waggoner*, 2004 UT 29, ¶ 31, 94 P.3d 186. After reviewing the prosecutor's remarks, we conclude that they were directed only to the "paucity or absence of evidence adduced by the defense," *Bailey*, 712 P.2d at 286, not to Defendant's decision not to testify. Thus, the remarks cannot "fairly be characterized as an overt reference to [Defendant's] failure to testify." *Nelson–Waggoner*, 2004 UT 29 at ¶ 31, 94 P.3d 186. Therefore, we conclude that the prosecutor's statements at issue did not improperly reference Defendant's decision not to testify.

¶ 20 The prosecutor's statements at issue did not (1) shift the burden of proof to Defendant or (2) improperly reference Defendant's decision not to testify. Therefore, we conclude that the trial court did not abuse its discretion by denying Defendant's motion for a mistrial.

## CONCLUSION

¶ 21 We conclude that the trial court did not abuse its discretion by either admitting Defendant's confession into evidence or denying his motion for a mistrial. Therefore, we affirm Defendant's conviction.

¶ 22 WE CONCUR: RUSSELL W. BENCH, Associate Presiding Judge, and GREGORY K. ORME, Judge.