Justice PARRISH,
opinion of the court:
INTRODUCTION
T1 On certiorari, petitioner Andrew Le-Beau asks us to consider whether the court of appeals erred in affirming the district court's imposition of a sentence of life without the possibility of parole following Mr. LeBeau's conviction for aggravated kidnapping pursuant to Utah Code section 76-5-802. Mr. LeBeau's conviction stems from a domestic dispute triggered by Mr. LeBeau's suspicion that his then-girlfriend, Stephanie, was engaged in an affair with another man. At trial, Mr. LeBeau was convicted of aggravated kidnapping, aggravated assault, and cruelty to an animal.[1] The district court imposed a sentence of life without the possibility of parole (LWOP) for the aggravated kidnapping conviction, which was to run consecutively to Mr. LeBeau's lesser sentences for the other convictions.
12 Mr. LeBeau unsuccessfully challenged his sentence of LWOP before the court of appeals. He now argues that the court of appeals erred when it affirmed the district court's imposition of LWOP because the district court failed to properly consider whether the interests of justice warranted a lesser sentence as allowed for in Utah's aggravated kidnapping statute. Because we conclude that the district court improperly applied the sentencing provisions of section 76-5-302 of the Utah Code, we reverse Mr. LeBeau's sentence of LWOP and remand for new sentencing.
BACKGROUND
T 3 In early 2009, Mr. LeBeau and Stephanie were living together, but they were experiencing trouble in their relationship. Stephanie had moved out of their shared home for a period of time before returning and, according to Mr. LeBeau, had been unfaithful during the relationship. Both Stephanie and Mr. LeBeau struggled with drug addiction. In early February, Stephanie moved out of the couple's shared bedroom but continued to live in the house.
T 4 The couple was acquainted with a man named Mark, from whom they occasionally purchased drugs. In February 2009, Mr. LeBeau began to suspect that Stephanie was having an affair with Mark. On February 28, 2009, Stephanie spent the afternoon and evening with Mark. Mr. LeBeau repeatedly called Stephanie and sent her text messages, *257 but she ignored him. When Stephanie returned home sometime between 10:80 and 11:00 that night, Mr. LeBeau angrily confronted her about where she had been. Stephanie testified that Mr. LeBeau became violent when she refused to explain where she had been and began hitting and choking her.
T5 As the argument escalated, Mr. Le-Beau forced Stephanie to accompany him to the garage, where he threatened to bind her with duct tape and continued to behave violently. Mr. LeBeau placed his dog in the back seat of Stephanie's car before forcing Stephanie to get into the front seat, telling her they were going for a "fast ride." Mr. LeBeau then got into the driver's seat and began to drive toward Mark's house.
T6 As Mr. LeBeau drove, he attracted the attention of Sergeant Marcelas Rapela of the Midvale Police Department. Sergeant Rape-la began to follow the couple's car, ultimately signaling Mr. LeBeau to stop with lights and siren. Stephanie testified that she repeatedly asked Mr. LeBeau to pull over. Rather than stopping, Mr. LeBeau continued toward Mark's house. Mr. LeBeau initially turned onto Mark's street heading in the wrong direction. While turning the car around, Mr. LeBeau nearly crashed into Sergeant Rape-la's patrol car and accelerated rapidly toward Mark's house.
T7 As the car accelerated, Stephanie opened the passenger door in an attempt to jump from the car. Officer David Wilson, who had arrived to assist Sergeant Rapela, observed Stephanie's foot dragging along the road as the car accelerated. As the car raced down Mark's street at approximately sixty miles per hour, it collided with Mark's box-style truck, which was parked at the end of the street.
8 Stephanie was thrown from the car on impact. Officer Wilson testified that he observed Stephanie's body ricochet off the passenger-side door as the collision occurred. Stephanie suffered extensive injuries, including a broken eye socket, fractured femur, fractured pelvis, broken arm, and shattered ankle. Mr. LeBeau's dog was also injured in the crash and required surgery. Mr. Le-Beau did not suffer any significant injuries.
T9 The State charged Mr. LeBeau with aggravated kidnapping based on the serious bodily injury Stephanie suffered, attempted murder, aggravated assault, failure to respond to an officer's signal to stop, and cruelty to an animal. Mr. LeBeau pled guilty to failure to respond to an officer's signal and was convicted by a jury of aggravated kidnapping, aggravated assault, and cruelty to an animal. Though the State argued at trial that Mr. LeBeau intentionally crashed into Mark's truck in an attempt to kill Stephanie, Mr. LeBeau claimed the collision occurred while he was distracted trying to keep Stephanie from jumping out of the car. The jury acquitted Mr. LeBeau of attempted murder.
{10 At Mr. LeBeau's sentencing hearing, the court determined that the sentencing matrices created by the Utah Sentencing Commission were not applicable to Mr. Le-Beau's case because Utah's aggravated kidnapping statute created "a minimum mandatory type sentence." As a result of this determination, the court began with a presumptive sentence of LWOP and then proceeded to consider whether the balance of aggravating and mitigating factors warranted a reduction in Mr. LeBeau's sentence to one of the statutorily allowed lesser sentences. The court identified two aggravating factors on the record. First, it found that Mr. Le-Beau's continued refusal to accept responsibility for his actions was an aggravating factor. Second, the court expressed concern about the serious injuries Stephanie suffered as a result of Mr. LeBeau's conduct.
T 11 The court then considered, and rejected, several mitigating factors raised by Mr. LeBeau. First, Mr. LeBeau claimed to have acted under a strong provocation because he believed Stephanie was having an affair with Mark. The court rejected this mitigating factor, stating, "There was no evidence presented that [Stephanie] was having an affair. There was no evidence that she was involved in a sexual relationship." Second, Mr. Le-Beau claimed to have a good employment history and strong family ties, both of which indicate rehabilitative potential. The court rejected Mr. LeBeau's claim relating to his employment history, stating, "You were un *258 employed at the time of this incident. I don't know how you can say that was exceptionally good employment." Similarly, the , court refused to consider Mr. LeBeau's family ties as a mitigating factor because Mr. LeBeau had not "seen [his] mother or ... sister for years at the time they came to testify at trial." Finally, Mr. LeBeau claimed that he had an extended period of arrest-free time prior to this incident. The court rejected this mitigating factor because Mr. LeBeau had an outstanding arrest warrant in Alabama and had admitted to using illegal drugs during that time period. The court found that the fact that Mr. LeBeau had not been arrested for, nor convicted of, an offense for several years prior to this incident did not necessarily mean that Mr. LeBeau had been law abiding. The court thus refused to consider Mr. LeBeau's relatively minor eriminal history a mitigating factor.[2]
112 After weighing the aggravating and mitigating circumstances, the district court found that the aggravating cireumstances were "substantial" and the mitigating ciream-stances "almost non-existent." It then imposed LWOP for the aggravated kidnapping conviction, the most severe sentence allowed under Utah: Code section 76-5-302. The court also sentenced Mr. LeBeau to zero to five years for both the aggravated assault and failure-to-respond convictions. Finally, the court imposed a suspended sentence of 180 days for the eruelty-to-an-animal convietion and ordered Mr. LeBeau's lesser sentences to run consecutively with his LWOP sentence.
{13 Mr. LeBeau timely appealed, arguing that the district court abused its discretion in imposing a sentence of LWOP for his aggravated kidnapping conviction. State v. Lebeau, 2012 UT App 235, ¶ 16, 286 P.3d 1. Specifically, Mr. LeBeau argued that the district court failed to adequately consider the interests of justice, as required by Utah Code section 76-5-802(4). See infra ¶ 24. According to Mr. LeBeau, the district court abused its discretion by (1) failing to consider as a mitigating factor that Mr. LeBeau acted under provocation, (2) failing to give adequate weight to Mr. LeBeau's family support and employment history, (8) failing to credit Mr. LeBeau with his relatively minor prior criminal history, and (4) imposing LWOP without consideration of the proper role of the Board of Pardons and Parole in evaluating the rehabilitative prospects of offenders. Lebeau, 2012 UT App 235 ¶¶ 13, 28, 30, 286 P.3d 1.
114 The court of appeals rejected Mr. LeBeau's arguments and upheld his LWOP sentence. Id. 137. The appeals court found that the district court "expressly considered all of [Mr. LeBeau's] mitigating evidence" and that Mr. LeBeau had "demonstrated no more than his disagreement with how the court weighed the mitigating factors." Id. 129. Additionally, the appeals court reasoned that Mr. LeBeau's LWOP sentence was the presumptive sentence prescribed by the Legislature and was, therefore, appropriate. Id. ¶¶ 34-36.
[ 15 We granted certiorari on the question of "[wlhether the court of appeals erred in affirming the district court's imposition of a sentence of life without parole pursuant to section 76-5-8028) of the Utah Code." We have jurisdiction pursuant to Utah Code seetion 78A-3-102(8)(a).
STANDARD OF REVIEW
116 "On certiorari, we review the decision of the court of appeals and not that of the district court." State v. Brake, 2004 UT 95, ¶ 11, 108 P.3d 699. We review the decision of the court of appeals for correctness, granting "no deference to its conclusions of law." State v. Baker, 2010 UT 18, ¶ 7, 229 P.3d 650. 'To determine whether the court of appeals erred in affirming Mr. Le-Beau's sentence requires that we consider the standard of review applicable to the court *259 of appeals' review of the sentence. When reviewing a district court's sentencing decision, appellate courts "traditionally afford[ ] the [district] court wide latitude and discretion." State v. Moa, 2012 UT 28, ¶ 34, 282 P.3d 985 (alterations in original) (internal quotation marks omitted). An appellate court will, therefore, only set aside a sentence if the sentence represents an abuse of discretion, if the district court "fails to consider all legally relevant factors, or if the sentence imposed is clearly excessive." State v. McCovey, 803 P.2d 1234, 1235 (Utah 1990) (footnote omitted) (internal quotation marks omitted). However, a district court's sentencing determination constitutes an abuse of discretion if such determination is based on an erroneous interpretation of law. See State v. Barrett, 2005 UT 88, ¶¶ 14-17, 127 P.3d 682.
ANALYSIS
I. UTAH'S AGGRAVATED KIDNAPPING STATUTE
T17 Mr. LeBeau was convicted of aggravated kidnapping pursuant to section 76-5-302 of the Utah Code. Section 76-5-302 defines aggravated kidnapping as a first degree felony and establishes a complex sentencing scheme that contemplates a range of possible sentences based on the seriousness of the offender's conduct. Mr. LeBeau was sentenced pursuant to subsection (8)(b), which establishes that aggravated kidnapping resulting in "serious bodily injury to another" is punishable by LWOP, "except as provided in Subsection ... (4)." Utax Cop® § 76-5-302(8)(b) (2008). Subsection (4), in turn, allows a sentencing court to impose an indefinite term of six, ten, or fifteen years to life if it finds that doing so would be "in the interests of justice." [3] Id. § 76-5-802(4).
1 18 The heart of Mr. LeBeau's challenge concerns the proper interpretation of subsee-tions (8)(b) and (4). Mr. LeBeau argues that the district court failed to adequately consider the "interests of justice" when sentencing him to LWOP. Though the court did consider whether Mr. LeBeau's sentence should be reduced, it did so by starting with a presumptive sentence of LWOP and then considering "the aggravating and mitigating circumstances" of the crime to determine if Mr. LeBeau's sentence should be reduced to one of the lesser terms allowed for in subsection (4). Though the district court did not expressly state its reasoning, it appears to have interpreted the Legislature's use of the phrase "interests of justice" as equivalent to the "aggravating and mitigating cireum-stances" recognized by the Utah Sentencing Commission as part of its sentencing guidelines. Mr. LeBeau asserts that this was in error because the Legislature's use of the phrase "interests of justice" requires consideration of factors beyond the aggravating and mitigating cireumstances of his particular crime. Specifically, Mr. LeBeau argues that the district court was required to consider (1) the severity of an LWOP sentence, (2) whether a sentence of LWOP was proportionate to the seriousness of Mr. LeBeau's crime, and (8) Mr. LeBeau's rehabilitative potential. Further, Mr. LeBeau argues that the district court erred when it rejected several of Mr. LeBeau's proposed mitigating *260 factors by employing incorrect legal standards in its analysis.
{19 Our task of reviewing Mr. LeBeau's sentence requires that we interpret section 76-5-302 of the Utah Code, which calls for the imposition of a sentence of LWOP unless the interests of justice dictate a lesser sentence. We note, first, that any error on the part of the district court in its interpretation of subsection (4)'s interests-of-justice language would be harmless if the district court were free to sentence Mr. LeBeau to LWOP without considering the interests of justice in the first instance. Thus, the threshold question is whether the district court was required to engage in an interests-of-justice analysis prior to sentencing Mr. LeBeau to LWOP under subsection (8)(b). Because we conclude that the court was so required, we then turn our attention to the proper meaning of "interests of justice" as used in subsection (4). Finally, we consider Mr. LeBeau's claim that the district court erred when it rejected several of his proposed mitigating factors.
II, THE DISTRICT COURT WAS REQUIRED TO CONDUCT AN INTERESTS-OF-JUSTICE ANALYSIS PRIOR TO SENTENCING MR. LEBEAU TO LWOP
120 As with any question of statutory interpretation, our primary goal is to effectuate the intent of the Legislature. State v. Watkins, 2013 UT 28, ¶ 18, 309 P.3d 209. The best evidence of the Legislature's intent is the statute's plain language. Marion Energy, Inc. v. KFJ Ranch P'ship, 2011 UT 50, ¶ 14, 267 P.3d 863. "We presume that the [Llegislature used each word advisedly and give effect to each term according to its ordinary and accepted meaning." C.T. ex rel. Taylor v. Johnson, 1999 UT 35, ¶ 9, 977 P.2d 479 (internal quotation marks omitted). Further, "we interpret[ ] statutes to give meaning to all parts, and avoid[ ] rendering portions of the statute superfluous." Watkins, 2013 UT 28, ¶ 23, 309 P.3d 209 (alterations in original) (internal quotation marks omitted). To do so, "we read the plain language of the statute as a whole, and interpret its provisions in harmony with other statutes in the same chapter and related chapters." State v. Barrett, 2005 UT 88, ¶ 29, 127 P.3d 682 (internal quotation mark omitted).
] 21 Subsection (8)(b) of Utah's aggravated kidnapping statute directs sentencing courts to impose a sentence of LWOP, "except as provided in Subsection ... (4)." Uran CopE § 76-5-802(8)(b) (2008). Subsection (4) allows the court to impose a lesser indefinite term if it finds that doing so would be "in the interests of justice." Id. § 76-5-8302(4). We read subsections (8) and (4) together as requiring an interests-of-justice analysis. First, the plain language of subsection (8)(b) directs the court to impose a sentence of LWOP "except as provided in Subsection ... (4)." Id. § 76-5-802(8)(b). Here, the word "except" is followed by a phrase that describes the particular manner or cireum-stance-as provided in subsection (4d)-in which a sentence of LWOP is not applicable. As such, subsection (8)(b) is best read as establishing a presumptive sentence of LWOP while also delineating the particular cireumstance in which LWOP would be inappropriate. It follows that, in order to determine whether LWOP would be inappropriate, a court must engage in the interests-of-justice analysis laid out in subsection (4). If courts were free to impose LWOP without first considering the interests of justice, the exception provided by the Legislature would be rendered meaningless. Thus, we read subsections (8)(b) and (4) together as requiring that sentencing courts consider the interests of justice to determine whether a lesser sentence is appropriate.
122 Reading Utah's aggravated kidnapping statute as a whole further supports this conclusion. The statute distinguishes three types of aggravated kidnapping: (1) aggravated kidnapping, (2) aggravated kidnapping resulting in serious bodily injury, and (3) aggravated kidnapping committed by a defendant who has previously been convicted of a "grievous sexual offense." Id. § T6-5-302(8). It then establishes different sentences for each,. Id. For example, a defendant convicted of aggravated kidnapping may be sentenced to a sentence of fifteen years to life. Id. § 76-5-802(8)(a). In contrast, defendants who have been previously convicted *261 of a grievous sexual offense or who cause substantial bodily injury in the course of an aggravated kidnapping face a maximum sentence of LWOP. Id. § 76-5-802@)(b)-(c). This reflects the legislative judgment that more serious offenses are deserving of harsher punishment.
1 23 Further bolstering our conclusion that the Legislature intended to differentiate between different types of aggravated kidnapping, the Legislature directed that the maximum sentences for aggravated kidnapping and aggravated kidnapping resulting in serious bodily injury should be imposed "except as provided in Subsection ... (4)," which triggers the interests-of-justice analysis. See id. § 76-5-802(8)(a)-(b). But the Legislature specifically directed that defendants who have been previously convicted of grievous sexual offenses may not be sentenced to one of the lesser terms contained in subsection (4). Id. § 76-5-802(5). Thus, a sentencing court has no option but to impose a sentence of LWOP for these offenders. In contrast, defendants who cause substantial bodily injury are eligible for a lesser sentence if the sentencing court determines that such a reduction is in the interests of justice. Thus, the Legislature provided for the possibility of a reduced sentence for defendants sentenced under either subsection (8)(a) or (8)(b), but not for those sentenced under subsection (8)(c). This tri-level distinction makes clear the Legislature's judgment that not all aggravated kidnappings are the same and evidences the Legislature's intent to punish more "serious" kidnappings with harsher sentences.
1] 24 Were we to conclude that sentencing courts could impose the statutory presumptive sentence under subsections (8)(a) and (8)(b) without first considering the interests of justice, it would undermine the distinctions between the different types of aggravated kidnapping drawn by the Legislature. Though the language of subsection (4) is permissive, the statutory scheme makes clear that the Legislature did not intend to give sentencing courts a license to ignore this subsection altogether. Rather, reading subsections (8) and (4) together, we conclude that the Legislature intended sentencing courts to consider the interests of justice when sentencing defendants under subsections (8)(a) or (3)(b), but not under subsection (8)(c).
III. THE DISTRICT COURT FAILED TO PROPERLY CONSIDER THE INTERESTS OF JUSTICE AS REQUIRED BY UTAH CODE SECTION 76-5-802(4)
125 Having determined that the district court was required to engage in an-interests-of-justice analysis when sentencing Mr. LeBeau, we turn our attention to what is required for such an analysis. At sentencing, the court did consider whether a lesser indeterminate sentence was appropriate for Mr. LeBeau. In doing so, the court considered Mr. LeBeau's crime in light of the list of aggravating and mitigating cireumstances compiled by the Utah Sentencing Commission in its sentencing guidelines. Though the district court did not articulate its reasoning on the record, it appears that the court equated the weighing of these aggravating and mitigating cireumstances with an interests-of-justice analysis. Mr. LeBeau argues that this was in error and that an interests-of-justice analysis requires the court to consider factors other than the aggravating and mitigating circumstances surrounding a particular defendant and crime.[4] We have yet to consider the import of the Legislature's use of the phrase "interests of justice" in this context. Therefore, our task is to determine what the Legislature intended when it instructed courts to consider whether the interests of justice would be served by imposing a lesser sentence. ~
$26 We begin, as always, with the statutory text. Marion Emergy, Inc. v. KFJ Ranch P'ship, 2011 UT 50, ¶ 14, 267 P.3d 863. We presume that the Legislature *262 chose its words carefully, using each term advisedly. State v. Barrett, 2005 UT 88, ¶ 29, 127 P.3d 682. Absent some indication of contrary legislative intent, we give effect to each term according to its ordinary meaning. C.T. ex rel. Taylor v. Johnson, 1999 UT 35, ¶ 9, 977 P.2d 479. If the statutory language remains ambiguous-meaning the statute is susceptible to two or more reasonable interpretations-we may resort to other indications of legislative intent, including legislative history and policy considerations. State v. Watkins, 2013 UT 28, ¶ 24, 309 P.3d 209.
T27 The Legislature did not provide a statutory definition of "in the interests of justice." Accordingly, we look to other sources to derive the meaning of the phrase. See State v. Bagnes, 2014 UT 4, 114, 822 P.3d.719 (approving the use of dictionaries to ascertain the "range of possible meanings that a statutory term may bear" (internal quotation mark omitted)). Generally, the phrase "in the interests of" connotes being "to the advantage or advancement of" something. Ranpom House Dictionary or THE Enceutse LanauacE 998 (2d ed.1987); see also WerstEr's NEw Counrer Dictionary 744 (2007) (defining "in the interests of" as "for the sake of"). So, something "in the interests of justice" will act to advance or promote justice. But "justice" is an abstract notion that incorporates a variety of meanings. As used in this context, "justice" imparts notions of impartiality or fairness, including the receipt of a "reward or penalty as deserved." WeestEr's New Counrar DICTIONARY 777. A sentence "in the interests of justice" will therefore work to promote impartiality or fairness and ensure the defendant receives the penalty he deserves. While these definitions inform our understanding of the Legislature's intent, they do not adequately direct courts as to what they should actually consider when confronted with a particular case. Accordingly, we must look for further guidance.
128 The phrase "in the interests of jus-. tice" appears in many other parts of the Utah Code, but is never specifically defined. See, eg., Utax Cope § 75-7-204(2)(b) (2013) (allowing Utah courts to entertain proceedings involving foreign trusts if "the interests of justice would be seriously impaired" by dismissal); id. § 78B-1-136 (establishing a witness's right "to be detained only so long as the interests of justice require"); id. § 77-8a-1(2)(d) (directing Utah courts to jointly try co-defendants unless the court finds that separate trials would be in "the interests of justice"); Uran R. Evip. 807(a)(d) (allowing courts to admit otherwise inadmissible hearsay statements if doing so is in "the interests of justice"); Utax R.App. P. 5(f) (directing that an appeal from an interlocutory order should ouly be granted if in the "interests of justice"). What quickly becomes clear is that the Legislature cannot have meant to use the phrase "in the interests of justice" in the same manner in all these different contexts.
129 The Legislature added the interests-of-justice language to Utah's aggravated kidnapping statute in 2007 as part of a sweeping revision of the penalties associated with sexual offenses and kidnapping. See 2007 Utah Laws 2060-78. The Legislature crafted a sentencing scheme substantially similar to that found in the aggravated kidnapping statute in at least eight other criminal statutes. See Utax Cop® §§ 76-4-102 (attempt), -204 (criminal solicitation); id. §§ 76-5-301.1 (child kidnapping), -402 (rape), 402.1 (rape of a child), 402.2 (object rape), -404 (forcible sexual abuse), -405 (aggravated sexual assault). Each of these statutes, except solicitation and attempt, governs crimes involving kidnapping and sexual assault. And in each case, the Legislature created a presumptive sentence and instructed sentencing courts to consider whether the interests of justice warranted a lesser sentence. Our task, then, is to determine what the phrase means in the context of the sentencing scheme crafted by the Legislature in these related statutes.
A. Section 76-5-802(4)'s Interests-of-Justice Amalysis Is not Equivalent to Weighing the Aggravating and Mitigating Circumstances
T 30 As an initial matter, we conclude that the Legislature did not intend the phrase "interests of justice" as a mere substitute for the weighing of aggravating and mitigating cireumstances recognized by the Sentencing
*263 Commission.[5] First, the plain language of the statute does not support such an interpretation. The Legislature instructed courts to consider the "interests of justice," not just to weigh the "aggravating and mitigating cireumstances." Though the two concepts are related, they are not equivalent.
{31 The Utah Sentencing Commission is empowered to create sentencing guidelines designed to "increase equity in criminal sentencing." Urax Cope § 68M-7-404(8). To that end, the Sentencing Commission creates sentencing guidelines that include a nonex-haustive list of aggravating and mitigating cirenmstances that are used by courts in their sentencing decisions. See UTax ApuLt SEntENcinec anNp REuEass GuipELIn®s 13 (2009). The sentencing guidelines instruct courts to consider all of the aggravating and mitigating cireumstances of a particular crime holistically when sentencing offenders. Id. at 12. Had the Legislature intended courts to consider only the aggravating and mitigating cireumstances recognized by the Sentencing Commission when sentencing defendants under Utah's aggravated kidnapping statute, it had the means and knowledge to so instruct. Instead, the Legislature directed courts to consider "the interests of justice."
¶ 32 More tellingly, prior to 2007, section 76-3-201(7)(e) of the Utah Code did instruct the courts to "consider sentencing guidelines regarding aggravating and mitigating circumstances promulgated by the Sentencing Commission" when "determining a just sentence." Defendants convicted of aggravated kidnapping were sentenced to an indefinite term of six, ten, or fifteen years to life. Utax Cope § 76-5-302(8) (2006). The court was required to impose the middle-severity term of ten years to life, "unless there [were] cireumstances in aggravation or mitigation of the crime." Id. § 76-3-201(7)(a). Section 76-3-201(7)(e) then directed the court to consider the aggravating and mitigating cireum-stances recognized by the Utah Sentencing Commission. However, this sentencing scheme was removed from the Utah Code in the same revision that created the interests-of-justice sentencing scheme in the related kidnapping and sexual assault statutes.[6] Compare 2007 Utah Laws 2064, with id. at 2069. In light of the Legislature's decision in 2007 to remove references to the Sentence-ing Commission's list of aggravating and mitigating factors, we do not read section 76-5-302(4)'s interests-ofjustice language as equivalent to the previous aggravating-and-mitigating-cireumstances language.
T83 In Mr. LeBeau's case, the district court looked to the list of aggravating and mitigating cireumstances contained in the sentencing guidelines and no further. Because the Legislature replaced its previous aggravating-and-mitigating-cireumstances instruction with the new mandate to consider the interests of justice, we conclude that the district court's analysis was in error,. We now turn our attention to what a proper interests-of-justice analysis requires.
B. An Interests-of-Justice Amalysis Requires Consideration of Proportionality and the Defendant's Rehabilitative Potential
184 Though the Legislature did not specifically define "interests of justice" in the aggravated kidnapping statute, it has provided guidance elsewhere in the Utah Code. Section 76-1-106 of the Utah Code directs that Utah's criminal code "shall be construed according to the fair import of [its] terms to promote justice and to effect the objects of the law and general purposes of [slection 76-1-104." (Emphasis added). Section 76-1-104 sets forth four general goals of Utah's criminal code:
(1) Forbid and prevent the commission of offenses.
(2) Define adequately the conduct and mental state which constitutes each offense and safeguard conduct that is without fault from condemnation as eriminal.
*264 (8) Prescribe penalties which are proportionate to the seriousness of offenses and which permit recognition [of] differences in rehabilitation possibilities among individual offenders.
(4) Prevent arbitrary or oppressive treatment of persons aceused or convicted of offenses.
(Emphasis added.) '
T 35 The goals enumerated in section 76-1-104 relate to different aspects of the criminal code. For example, subsection (2) relates to the public definition of offenses. This necessarily incorporates ideas of fair notice and due process because a just eriminal code must adequately inform those subject to it of the behaviors that will expose them to erimi-nal liability. Subsection (4) addresses the treatment of individuals onee they are brought into the criminal justice system and recognizes the importance of fair treatment of those individuals.
136 But it is subsection (8) that relates most closely to sentencing. Subsection (8) articulates the legislative goal that sentencing be proportionate to the seriousness of the defendant's conduct and recognizes that individual offenders have different potential for rehabilitation. Thus, reading sections 76-1-104 and 76-1-106 together, we must construe our criminal code in ways that "promote justice," including principles of proportionality and a recognition of the rehabilitative potential of individual defendants.
137 Keeping these basic principles in mind, we conclude that the Legislature's use of the phrase "interests of justice" necessarily requires the court to consider the proportionality of the defendant's sentence in relation to the severity of his offense. Additionally, it requires that sentencing judges appropriately weigh a defendant's potential for rehabilitation.
1. A Proportionality Analysis Requires the Court to Consider the Seriousness of the Defendant's Conduct When Compared to the Severity of His Sentence and the Sentences Imposed for Different Offenses
$38 "The principle that a punish ment should be proportionate to the crime is deeply rooted and frequently repeated in common-law jurisprudence." Solem v. Helm, 463 U.S. 277, 284, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). For example, the United States Supreme Court has long recognized the existence of a proportionality principle in its jurisprudence related to the Eighth Amendment's Cruel and Unusual Punishments Clause. U.S. Const. amend. VIII, see, eg., Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910) (recognizing that the Eighth Amendment prohibits grossly disproportionate sentences). Though the Court has struggled to effectively articulate the precise contours of the Eighth Amendment's proportionality principle, see, e.g., Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 8386 (1991), it has articulated a set of guiding principles that can assist in our analysis.
1 39 It is important to note, first, that the Supreme Court's proportionality jurisprudence arose in a very different context than that with which we are now confronted. Typically, the Court was confronted with a challenge to the constitutionality of a legislatively enacted sentencing statute. See, eg., Weems, 217 U.S. at 359, 30 S.Ct. 544; Rummel v. Estelle, 445 U.S. 263, 265, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) (upholding a mandatory life sentence with the possibility of parole under a recidivist statute for a defendant's third nonviolent felony); Graham v. Florida, 560 U.S. 48, 75, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) (rejecting a sentence of LWOP for juveniles convicted of nonhomicide crimes). As it has addressed these constitutional challenges, the Court has struggled to balance deference to legislative judgment as to the appropriate sentence for a particular crime with the longstanding precept that sentences "should be graduated and proportioned to [the] offense." Weems, 217 U.S. at 367, 30 S.Ct. 544; see also Harmelin, 501 U.S. at 998-1001, 111 S.Ct. 2680 (attempting to reconcile the need for judicial deference to legislatively enacted sentences and the need for proportionality). But the case before us presents a very different question. We are not *265 being asked to overturn a sentence imposed by the Legislature on the grounds that it is constitutionally disproportionate. Instead, our task is to ensure that courts properly comply with the Legislature's instruction to undertake a proportionality analysis when sentencing defendants pursuant to section 76-5-302 of the Utah Code. Accordingly, while we take guidance from the Supreme Court's proportionality jurisprudence, we do so with the understanding that our analysis is necessarily different.
€ 40 In Solem, the Supreme Court considered the constitutionality of a South Dakota recidivism statute that imposed a sentence of LWOP on a defendant who had written a "no account" check for $100, a class 5 felony under South Dakota law. 468 U.S. at 280-81 & n. 5, 108 S.Ct. 3001. Because the defendant had previously been convicted of six other nonviolent felonies, his sentence was enhanced to that of a class 1 felony, LWOP. Id. at 281, 108 S.Ct. 8001. The defendant brought a proportionality challenge under the Eighth Amendment, arguing that LWOP was grossly disproportionate to his crime of passing a $100 bad check. Id. at 288, 108 S.Ct. 8001.
%41 The Court enumerated three objective factors designed to guide its proportionality analysis: (1) the seriousness of the defendant's conduct in relation to the severity of the sentence imposed, (2) the severity of the sentence imposed in light of sentences imposed for other crimes in the same jurisdiction, and (8) the severity of the sentence imposed in relation to sentences imposed for the commission of the same crime in other jurisdictions. Id. at 290-92, 108 S.Ct. 3001. In State v. Gardner, this court considered a constitutional challenge to a sentence of death for a defendant convicted of aggravated assault while in prison. 947 P.2d 630 (Utah 1997). In a thorough discussion of Utah's Cruel and Unusual Punishments Clause, Justice Durham articulated a 'test for proportionality that is substantially similar to that which was established in So-lem. Id. at 639-40 (Durham, J., plurality opinion). We find this reasoning persuasive and adopt the first two of these factors for the purpose of section 76-5-802(4)'s interests-of-justice analysis. But in the context before us, we see no indication that the Legislature intended sentencing courts to consider the sentences imposed by the legislatures of other jurisdictions. Accordingly, we conclude that the third Solem factor is inappropriate for an interests-of-justice analysis under section 76-5-302 of the Utah Code.
a. The seriousness of the defendant's conduct in relation to the severity of his sentence
T 42 First, sentencing courts should consider "the gravity of the offense and the harshness of the penalty." Solem, 463 U.S. at 290-91, 103 S.Ct. 3001. This factor necessarily includes an examination of the nature and circumstances of the defendant's crime. Though we decline to articulate an exhaustive list of cireumstances a court should consider, we note that the list of aggravating and mitigating circumstances created by the Utah Sentencing Commission provides a good starting point. Many of the Sentencing Commission's guidelines already take into account factors relevant to the gravity of the defendant's conduct. However, we emphasize that courts should not limit their inquiry merely to those factors recognized by the Sentencing Commission. Rather, courts should consider all relevant facts raised by the parties about the defendant's crime in relation to the harshness of the penalty.
143 In general, nonviolent crimes should be viewed as less serious than violent crimes. Id. at 292-93, 103 S.Ct. 3001. The Legislature made a similar determination when it mandated enhanced penalties for repeat violent offenders. See Copm § 76-3-208.5. Similarly, a violent offense committed in the presence of a child constitutes an aggravating factor during sentencing. Id. § 76-3-208.9. The considered judgment of the Legislature indicates that such violent offenses are to be considered as more serious than nonviolent ones.
' 44 The court may also consider the "absolute magnitude of the crime." Solem, 463 U.S. at 298, 103 S.Ct. 3001. A crime that results in the loss of more valuable property may be more serious than stealing a few hundred dollars worth of retail goods. For *266 example, in Utah, theft is usually a class B misdemeanor if the value of the property stolen is less than $500. Uran Cop® § 76-6-412(1)(d). In contrast, theft of property valued above $5,000 is a second degree felony, reflecting the Legislature's judgment that theft involving more valuable property is a more serious offense. See id. § 76-6-412(1)(a).
145 Another important consideration is the culpability of the offender. We generally agree with the notion that negligent conduct is less serious than intentional conduct. Solem, 463 U.S. at 293, 103 S.Ct. 3001; see also Utax Cop® § 76-2-101(1) (establishing that a defendant must act with at least criminal negligence to be guilty of an offense). Moreover, a defendant's motivation for committing his crime is highly relevant. For example, a homicide committed for monetary gain should generally be viewed as more serious than manslaughter that results from a defendant's reckless actions. Compare Uran Cope § 76-5-202(1)(g) (establishing a homicide committed for pecuniary gain as aggravated murder), with id. § 76-5-205 (defining manslaughter). See also id. § 76-3-203.3(2)(a) (establishing increased penalties for hate crimes committed "with the intent to intimidate or terrorize another person").
"I 46 We emphasize that a court's consideration of this first factor should be guided by its objective assessment of the nature and circumstances of the defendant's crime in relation to the harshness of the penalty. The above discussion is not intended to provide an exhaustive list of factors because sentencing remains a highly fact-dependent endeay- or. And the Sentencing Commission's list of aggravating and mitigating cireumstances remain relevant for this factor. On remand, the sentencing court should consider the seriousness of Mr. LeBeau's conduct in light of the severe nature of a sentence of LWOP when determining whether the interests of justice warrant the imposition of one of subsection (4)'s lesser sentences.
b. Sentences imposed for other crimes in Utah
1 47 Second, sentencing courts should compare the sentence being imposed to the sentences imposed for other crimes in Utah. A key proposition underlying the proportionality principle is fairness. Defendants who commit more serious offenses should be punished more severely than those who commit less serious crimes. As part of a proportionality analysis, courts should consider the sentences imposed for more and less serious crimes in order to ensure that a particular defendant's sentence is not arbitrary.
148 For example, in Utah, a person who commits intentional murder is guilty of a first degree felony punishable by an indeterminate sentence of fifteen years to life in prison. Utax Cop® § 76-5-208(8). In order for a defendant who commits a murder to be eligible for a sentence of LWOP, he must be convicted of aggravated murder as defined by section 76-5-202 of the Utah Code. Id. § 76-3-207.7. Aggravated murder requires that the defendant commit the crime under cireumstances that would justify such a severe sentence. Id. § 76-5-202(1). For example, a murder accompanied by the sexual abuse of a child or committed by the use of a weapon of mass destruction would qualify for aggravated murder. Id. § 76-5-202(1)(n)(@i), (2)(a). But absent the aggravating factors found in section 76-5-202, a defendant who commits first degree murder can expect a maximum sentence of life with the possibility of parole.
€49 Other crimes for which the Legislature has established LWOP as a possible sentence include a variety of sexual offenses, but only if the defendant is a repeat offender. For example, aggravated sexual assault, rape, and sodomy each carry a penalty of LWOP if the defendant was previously convicted of a grievous sexual offense. Id. §§ 76-5-405(2), -402(8)(c), -403(4)(c). In the case of a child victim, the Legislature allows a sentence of LWOP for first-time offenders if the defendant causes serious bodily injury. Id. §§ 76-5-404.1(5)Gb), - 408.1(2)®)(i). When the Legislature established this sentencing scheme for sexual offenses, it signaled its judgment that sexual crimes, which intrude on the fundamental bodily integrity of the victim like no others short of murder, are serious enough to warrant a sentence of LWOP.
*267 {50 In contrast, Mr. LeBeau was sentenced to LWOP for an aggravated kidnapping in which no one was killed and which was unaccompanied by the type of bodily and dignitary harm associated with sexual assaults. We agree that murder is generally a more serious crime than aggravated kidnapping. And sexual crimes, particularly those involving children, represent an especially heinous form of bodily insult. Of course, the Legislature is empowered to mandate a sentence of LWOP for aggravated kidnapping. Gardner, 947 P.2d at 639 (plurality opinion) ("What constitutes an adequate penalty is a matter of legislative judgment and diseretion...." (internal quotation marks omitted). But proper deference to the Legislature in this case includes deference to the entire sentencing scheme, including the Legislature's instruction that courts should consider the interests of justice. Thus, the proportionality principle incorporated into the Legislature's interests-of-justice requirement demands consideration of the penalties established by the Legislature for other crimes. On remand, the sentencing court should look to the sentences prescribed by our Legislature for other crimes to gain insight into whether the interests of justice favor a lesser sentence for Mr. LeBeau.
151 Having provided some guidance as to the proper proportionality analysis for the court on remand, we turn our attention to the second interests-of-justice factor in the Utah Code, the defendant's capacity for rehabilitation.
2. Proper Consideration of the Interests of Justice Includes Deference to the Role of the Board of Pardons and Parole
11 52 As noted above, one of the goals of the Utah Criminal Code is to promote justice through the imposition of penalties "which permit recognition [of] differences in rehabilitation possibilities among individual offenders." Urax CopE® § 76-1-104(8). The Board of Pardons and Parole (Board) has the power to "grant parole ... as provided by statute." Urax Const. art. VII, § 12(@)(a) We have previously recognized the important role the Board plays in Utah's indeterminate sentencing scheme. State v. Smith, 909 P.2d 236, 244 (Utah 1995); Labrum v. Utah State Bd. of Pardons, 870 P.2d 902, 907 (Utah 1998). In Smith, we rejected the district court's imposition of four consecutive sentences totaling a minimum mandatory sentence of sixty years. 909 P.2d at 244-45. Section 76-3-401(2) of the Utah Code directs district courts to consider the "rehabilitative needs of the defendant" when determining whether to impose consecutive or concurrent sentences. We held that the court's imposition of four consecutive sentences was an abuse of discretion, in part because the "Board is in a far better position than a court to monitor a defendant's subsequent behavior and possible progress toward rehabilitation while in prison and to adjust the maximum sentence accordingly." Id. at 244.
1 58 An important part of our reasoning in Smith centered on the Legislature's decision to grant the Board broad authority to determine what a particular defendant's maximum sentence should be. Id. The court of appeals concluded that the Legislature's decision to make LWOP the presumptive sentence for aggravated kidnapping "essentially countermanded, for this crime, Utah's long-standing sentencing philosophy of indeterminate sentencing." State v. Lebeau, 2012 UT App 235, ¶ 36, 286 P.3d 1. Were LWOP the only sentencing option for Mr. LeBeau, we might agree. But the Legislature instructed courts to consider the interests of justice when imposing a sentence under the aggravated kidnapping statute, expressly acknowledging that an indeterminate sentence is appropriate in some cases. And as we have already noted, the interests-of-justice analysis requires consideration of the defendant's potential for rehabilitation.
1] 54 Sentencing courts must consider all of the factors relevant to a defendant's rehabilitative potential, We have previously indicated that a defendant's age at the time of the commission of the crime is relevant. State v. Strunk, 846 P.2d 1297, 1300-02 (Utah 1993). Other relevant factors include the extent to which a defendant's crime was tied to alcohol or drug addiction and the defendant's prospects for treatment. The extent to which a defendant's eriminal history evidences continual violence is also relevant to his rehabilita *268 tive potential. Finally, the Sentencing Commission's guidelines, several of which relate to a defendant's capacity for rehabilitation, may prove helpful to sentencing courts in their analysis. We emphasize, however, that sentencing courts should consider all relevant factors when evaluating the defendant's rehabilitative potential.
T 55 In sum, sentencing courts should consider the proportionality of a sentence to the seriousness of the defendant's conduct and the defendant's potential for rehabilitation when determining whether the interests of justice support a lesser sentence. The sentencing court in this case failed to properly consider the interests of justice when sentencing Mr. LeBeau. We therefore reverse and remand for a new sentencing. Because the sentencing court on remand will be required to consider the aggravating and mitigating cireumstances as part of its interests-of-justice analysis, and because Mr. LeBeau argued that the sentencing court previously erred in evaluating several of his proposed mitigating factors, we take this opportunity to provide guidance to the sentencing court on remand.
IV. THE DISTRICT COURT IMPROPERLY EVALUATED MR. LEBEAUS PROPOSED MITIGATING FACTORS
156 Mr. LeBeau argues that the district court erroneously rejected several of his proposed mitigating factors, including (1) his claim that he acted under strong provocation, (2) his relatively minor criminal history, (8) his employment history, and (4) his family ties. Because the district court will be required to assess these factors in its interests-of-justice analysis on remand, we take this opportunity to provide guidance as to the appropriate legal standards.
A. The District Court Applied the Incorrect Legal Standard when It Rejected Mr. LeBeaw's Claim that He Acted Under Provocation
T57 At sentencing, Mr. LeBeau argued that he acted under provocation the night he kidnapped Stephanie because he was upset at the thought that she was having an affair with another man. The district court rejected this claimed mitigating circumstance, stating, "There was no evidence presented that [Stephanie] was having an affair. There was no evidence that she was involved in a sexual relationship. You came to that conclusion, but I found no basis for that." Mr. LeBeau argues that he was not required to prove that Stephanie was actually engaged in a sexual relationship with Mark. Rather, it was enough that Mr. LeBeau believed Stephanie was having an affair and reacted in the heat of the moment because of that belief.
158 We agree with Mr. LeBeau that the district court applied the incorrect legal standard in its analysis of this mitigating factor. Though we have never expressly addressed the question in this context, we recently reiterated the proper legal standard to be applied in the context of the affirmative defense of extreme emotional disturbance. See Ross v. State, 2012 UT 93, ¶¶ 27-33, 293 P.3d 345. In Ross, we held that "the fact finder must determine whether (1) subjectively, the defendant committed the [crime] while under the influence of extreme emotional distress, and (2) objectively, a reasonable person would have experienced an extreme emotional reaction and loss of self-control under the cireumstances." Id. ¶ 28. By analogy, determining whether Mr. LeBeau acted under strong provocation the night he kidnapped Stephanie requires the court to undertake a similar analysis, taking into account both Mr. LeBeau's subjective experience and the objective reasonableness of that experience.
1 59 In this case, the district court rejected Mr. LeBeau's claim of provocation on the basis that Mr. LeBeau had not established that Stephanie was, in fact, having an affair. This had the effect of requiring Mr. LeBeau to overcome a much greater hurdle than our precedent requires. Mr. LeBeau was not required to demonstrate that Stephanie and Mark were actually having an affair, only that Mr. LeBeau reasonably believed they were. But the district court wholly disre~ garded Mr. LeBeau's subjective experience in its analysis. There is evidence in the record that Mr. LeBeau's actions on the night in question were driven by his genuine belief that Stephanie was having an affair with Mark. Shortly before the fateful night, *269 Stephanie had moved out of the couple's shared bedroom. Stephanie testified that she spent the evening of February 23, 2009, with Mark and that Mr. LeBeau was upset when she returned home. Stephanie had refused to answer her cell phone while she was with Mark and Mr. LeBeau repeatedly asked Stephanie where she had been and with whom. -After Stephanie told Mr. Le-Beau that she had been with Mark, the situation escalated. Stephanie testified that Mr. LeBeau accused her of breaking his heart before forcing her into the car and driving toward Mark's house.
T 60 Stephanie's testimony paints the picture of a man acting, at least in part, out of jealousy and corroborates Mr. LeBeau's claim that he reacted emotionally on the night in question. Though this does not exeuse Mr. LeBeau's deplorable actions, his subjective emotional state was relevant to the mitigating factor of provocation. On remand, the sentencing court should examine Mr. LeBeau's actions in light of the proper legal standard to determine whether Mr. Le-Beau acted under provocation the night he kidnapped Stephanie.
B. The District Court Improperly Weighed Mr. LeBeaw's Criminal History
$61 Mr. LeBeau argues that the district court improperly rejected his relatively minor criminal history as a mitigating factor. We agree. Mr. LeBeau's criminal history includes a single conviction from 1989 for first degree robbery, when Mr. LeBeau was a juvenile, and a conviction for possession of marijuana in 1998. The presentence report also showed that Mr. LeBeau had been arrest free since 2001.
T62 At sentencing, the district court rejected Mr. LeBeau's criminal history as a mitigating factor because Mr. LeBeau had an outstanding warrant for his arrest in Alabama and was living under an assumed name at the time he kidnapped Stephanie. The court also noted Mr. LeBeau's admitted drug use as a reason to find Mr. LeBeau's criminal history nonmitigating. Though Mr. Le-Beau's history indicates that he was no angel, neither was he the type of hardened eriminal we normally associate with a sentence of LWOP.
T 63 Because the Legislature established a separate sentencing scheme for aggravated kidnapping, we agree with the district court judge that the sentencing guidelines established by the Utah Sentencing Commission are not strictly applicable to Mr. LeBeau's case. However, the sentencing guidelines were not rendered totally irrelevant. In particular, the eriminal history matrices still inform the inquiry into the seriousness of the defendant's criminal history. The Sentencing Commission is charged with developing sentencing guidelines designed to "increase equity in criminal sentencing." Urax CopE § G3M-7-404(8) (20183). We do not conclude that the Legislature intended for sentencing courts to completely ignore the wisdom of the Sentencing Commission guidelines when it established the sentencing scheme for seetion 76-5-802 of the Utah Code, particularly in light of the Legislature's instruction to consider the interests of Justice.
€64 As Mr. LeBeau notes, his eriminal history scores relatively low on the general offender matrix.[7] His score corresponds to a recommended sentence of eight years for a first degree felony involving injury to a person. According to the matrix, an offender with Mr. LeBeau's criminal history score would receive a recommended sentence of twenty years for first degree murder. Though the sentencing matrices do not carry the same weight in light of the sentencing scheme set out by the Legislature in the aggravated kidnapping statute, they still provide insight into the relative seriousness of a defendant's criminal history and provide an important check against arbitrary sentencing. Thus, the district court erred in completely disregarding the sentencing matrices when considering whether Mr. LeBeau's criminal history was a mitigating factor. On *270 remand, the sentencing court should consider the seriousness of Mr. LeBeau's criminal history, in light of the Sentencing Commission's guidelines, in order to determine whether it is considered a mitigating factor.
C. The District Court Improperly Discounted Mr. LeBeaw's Employment History
$65 Mr. LeBeau argues that the district court failed to properly credit his employment history as a mitigating factor. The court refused to consider Mr. LeBeau's employment history as a mitigating factor because Mr. LeBeau was unemployed at the time he committed his crime. However, the presentence report makes clear that Mr. Le-Beau was employed as a painter by the same employer from May 2005, until he was laid off in December 2008, only two months prior to his arrest. Though a defendant's employment status at the time of his crime is certainly a relevant factor, it is not solely determinative. In light of the severe economic recession that gripped the country in 2008, which was particularly devastating in the construction sector, the fact that Mr. LeBeau was laid off and had yet to find new employment within a two-month period cannot fairly be held against him. The district court erred when it relied solely on the fact that Mr. LeBeau was unemployed at the time he committed his crime. On remand, the court should consider the reasons for Mr. LeBeau's unemployment and the totality of his employment history when determining whether his employment history should be considered a mitigating factor.
D. The District Court Improperly Discounted Mr. LeBeaw's Family Support
166 The district court refused to consider Mr. LeBeau's family support strue-ture as a mitigating factor because Mr. Le-Beau "hadn't seen [his] mother or [his] sister for years at the time they came to testify at trial." Again, while a defendant's physical contact with his family is relevant, it cannot be determinative. Mr. LeBeau's family all resides out of state. In large part due to the expense of travel, prolonged physical separation of family members is a reality for many today. But with technological innovations, families can remain in close contact, even when physically separated. For example, Mr. LeBeau's mother told the presentence investigator that she and Mr. LeBeau talked on the phone monthly during the time he was in Utah. Again, the district court's focus on only one aspect of a potential mitigating factor was in error. On remand, the sentencing court should consider the full extent of Mr. LeBeau's family support and whether that can be considered a mitigating factor.
CONCLUSION
T67 The court of appeals erred in affirming the district court's imposition of a sentence of LWOP under section 76-5-302 of the Utah Code. The district court erred when it considered only those aggravating and mitigating cireumstances recognized by the Sentencing Commission instead of broadly considering the interests of justice as required by subsection 76-5-802(4). Though the district court is given broad discretion in sentencing decisions, that discretion must be exercised in light of the proper legal standards. Because the district court abused its discretion when sentencing Mr. LeBeau, we vacate Mr. LeBeau's sentence of LWOP and remand for further sentencing proceedings consistent with this opinion.

. Prior to trial, Mr. LeBeau also pled guilty to failure to respond to an officer's signal to stop.

. The district court did consider other mitigating factors not presently before us. The court credited Mr. LeBeau with two mitigating factors: (1) that Mr. LeBeau's imprisonment would work a hardship on Mr. LeBeau's dependents, and (2) that all of Mr. LeBeau's convictions arose from a single criminal episode. The court also rejected Mr. LeBeau's claim that his imprisonment would compromise his ability to make restitution, finding that the likelihood that Mr. LeBeau would ever be able to make restitution was remote.

. The relevant subsections of Utah's aggravated kidnapping statute provide:
(3) Aggravated kidnapping is a first degree felony punishable by a term of imprisonment of:
(a) except as provided in Subsection (3)(b), (3)(c), or (4), not less than 15 years and which may be for life;
(b) except as provided in Subsection (3)(c) or (4), life without parole, if the trier of fact finds that during the course of the commission of the aggravated kidnapping the defendant caused serious bodily injury to another; or
(c) life without parole, if the trier of fact finds that at the time of the commission of the aggravated kidnapping, the defendant was previously convicted of a grievous sexual offense.
(4) If, when imposing a sentence under Subsection (3)(a) or (b), a court finds that a lesser term than the term described in Subsection (3)(a) or (b) is in the interests of justice and states the reasons for this finding on the record, the court may impose a term of imprison ment of not less than:
(a) for purposes of Subsection (3)(b), 15 years and which may be for life; or
(b) for purposes of Subsection (3)(a) or (b):
(i) 10 years and which may be for life; or
(i) six years and which may be for life.
Urax Cope § 76-5-302(3)-(4).

. Mr. LeBeau argues that an interests-of-justice analysis requires courts to consider the totality of the circumstances. Though we agree that the Legislature's use of the phrase "interests of justice" requires consideration of factors beyond the aggravating and mitigating circumstances of the crime, we conclude that the statute requires a more focused analysis than Mr. LeBeau's proposed totality-of-the-circumstances test.

. As discussed below, the aggravating and mitigating circumstances relating to a particular crime are certainly relevant to the court's interests-of-justice analysis. Infra 1942, 46. But aggravating and mitigating circumstances are simply one facet of the proper analysis.

. Utah's capital sentencing scheme continues to direct that juries must consider the "totality of the aggravating and mitigating circumstances" when deciding whether to impose the death penalty. Urag Cope § 76-3-207(5)(b). Section 76-3-207(4) presents a nonexhaustive list of factors that may be considered.

. The presentence investigator also scored Mr. LeBeau's criminal history on the sex offender matrix. It is unclear why this matrix was used because Mr. LeBeau was not convicted of a sex offense and there were no sexual overtones to the kidnapping he committed. Nevertheless, that matrix recommends that a defendant with Mr. LeBeau's criminal history be sentenced to fifteen years to life, with a recommended sentence of twenty-one years.