VOROS, Judge
(concur-rung)
1 50 I concur in the judgment of the mgjority.opinion and I concur in the opinion itself except as to paragraph 44 and Part II.B.
{51 First as to paragraph 44. I do not agree that, in addition to the statutory sentencing factors in Utah Code section 76-8-401, a court contemplating the imposition of consecutive sentences needs to "keep in mind" the Board's role in determining the time an inmate actually serves. See supro 1.44. Our legislature has listed the factors a court contemplating consecutive sentences must consider: "In determining whether state offenses are to mun concurrently or consecutively, the court shall consider the gravity and cireumstances of the offenses, the number of victims, and the history, char'acter, and rehabilitative needs of the defendant," Utah Code Ann. § 76-83-4012) (Lex-isNexis 2012). So long as the court considers these factors, it complies with the statute. I see no basis for an additional requirement or suggestion that the sentencing court consider the Board's role in monitoring an inmate's rehabilitative progress with the potential for early release in mind. R
-152 Of course the Board does serve that role. Current law authorizes the Board to release any offender sentenced to a felony on or after April 29, 1996. See id. § T7-27-9(1)(a). This authority extends to offenders serving minimum mandatory sentences:
The board may not release any offender before the minimum term has been served unless the board finds mitigating cireum-stances which justify the release and un'less the board has granted a full hearing, in open session, after previous notice of the time and location of the hearing, and recorded the proceedings and dec1s1ons of the board.
Id. § Thus, the Board by statute holds the authority, on stated conditions, to release an offender before the expiration of a minimum mandatory sentence. This sentencing arrangement leaves no room "for a sentencing court to take into account . whether a particular consecutive sentencing decision may unduly 'invade[ ] the province' of the Board's parole authority." Supra [ 44 n. 11. -No court's consecutive sentencing decision can invade the authority the legislature has explicitly granted to the Board in subsection Ti-27-9(1).
53 As I see it, that subsection codifies the principle at the core of the Strunk/ Smith/Galli line of cases In Strunk, the court vacated a sentence of consectitive minimum terms totaling 24 years on the ground that it "robs the Board of Pardons of any flexibility to parole Strunk sooner." State v. Strunk, 846 P.2d 1297, 1301 (Utah 1993). The current subsection T7-27-9(1) restores the Board's flexibility to release an offender before the expiration of his consecutive minimum mandatory terms.: In Smith, the court vacated a sentence of consecutive minimum terms totaling 60 years on the ground that "[the Board is in a far better position than a court to monitor a defendant's subsequent behavior and possible progress toward rehabilitation while in prison and to adjust the maximum sentence accordingly." State v. Smith 909 P.2d 236, 244 (Utah. 1995). Again, subsection 77-27-9(1) grants . the Board authority to adjust a maximum sentence in light of an offender's rehabilitative progress. Finally, in:Gail, the court vacated a sentence of consecutive minimum terms totaling 15. years on the ground that the imposition of concurrent sentences "better serves CGalli's rehabilitative needs by allowing the Board of Pardons and Parole to release him from prison after five years if he has shown genuine progress toward rehabilitation." State v.. Galli, 967 P.2d 930, 938 (Utah 1998). Again, subsection 77-27-9(1) allows *733 the Board to release, before the expiration of consecutive minimum mandatory terms, an offender who has shown genuine progress toward rehabilitation. Thus, in my view, Strunk, Smith, and Galli have not merely "been legislatively moderated," see supra T 43, they have been superseded.
T 54 In sum, the current statutory scheme authorizes the sentencing court to sentence an offender to consecutive terms in compliance with section 76-8-401; it also authorizes the Board to release that offender before the : expiration of those terms in compliance with subsection 77-27-9(1). I would say no more about it.
T 55 Second, I do not join in Part ILB of the opinion, because it responds to a claim that Gray does not assert. Gray does not assert a garden-variety excessive sentencing claim. He does not, for example, contend that "no reasonable judge would have entered such a sentence nnder the circumstances." LeBeau v. State, 2014 UT 39, ¶ 75, 337 P.3d 254. Rather, he asserts a precisely focused Strunk/Smith/GalK claim,. Here's how he frames it in his opening brief: "The district court abused its digcretion in imposing consecutive sentences in a manner that deprived the Board of Pardons of discretion to take into account Gray's future conduct and possible progress towards rehabilitation." And here's how he summarizes it in his reply brief: "Gray's opening brief argues that the trial court abused its discretion by imposing consecutive sentences in a manner that deprived the Board of Pardons of discretion to release Gray during his lifetime." In short, as the majority recognizes, Gray does not attempt to show that his sentence is " 'clearly excessive' in some other way." Su-pro I 45.
156 We dispose of Gray's Stmnk/ Smith/Galli claim in Part ILA of this opinion. Our analysis should end there. I see no purpose in pondering "whether Gray would 'have been able to successfully carry his burden of persuasion" on another claim he does not in fact assert. See supra 146. That he does not assert it speaks volumes.

. An amendment to section 77-27-9(1)(b).[12] effective May 1, 1995, extended the Board's authority to grant release on parole to: persons sentenced after May 1, 1995 to minimum mandatory sen- ' tences for certain enumerated crimes against 'children. Act of Mar. 1, 1995 ch. 337, § 2, 1995 Utah Laws 1274, 1276.